UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PROSPECT PARK ASSOCIATION,

                Plaintiff,

-against-

KERRY A. DELANEY, *individually and as Acting Commissioner of the Office for Persons with Developmental Disabilities*; STANLEY SILVERSTEIN, *as Director of the Institute of Applied Human Dynamics*; THOMAS ROACH, *individually and as Mayor of the City of White Plains, New York*; and the CITY OF WHITE PLAINS, NEW YORK,

                Defendants.

OPINION AND ORDER
18-cv-4852 (NSR)

---

NELSON S. ROMÁN, United States District Judge

The Prospect Park Association, an unincorporated neighborhood community association in White Plains, New York, commenced the present action against Kerry A. Delaney, the commissioner of the New York State Office for People with Developmental Disabilities (OPWDD); Stanley Silverstein, the Director of the Institute of Applied Human Dynamics (IAHD); Thomas Roach, the Mayor of the City of White Plains; and the City of White Plains (collectively, "Defendants") on June 1, 2018. (*See* Compl., ECF No. 1.) Plaintiff alleges that, in their attempts to open a group home for individuals with developmental disabilities in the Prospect Park neighborhood in White Plains, New York, Defendants have violated the neighborhood residents' 14th Amendment due process and equal protection rights. (*Id.*) Presently before the Court is Plaintiff's application for a temporary restraining order and preliminary injunction enjoining Defendants from continuing any efforts to establish a group home in

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/23/2018

Prospect Park pending the resolution of this action. For the reasons that follow, Plaintiff's request for a preliminary injunction is DENIED.

## BACKGROUND

### A. New York Mental Hygiene Law § 41.34

Mental Hygiene Law § 41.34 sets forth the procedure for the establishment of community residential facilities for individuals with disabilities in the State of New York. Pursuant to § 41.34, a "sponsoring agency" must first notify the chief executive officer of a municipality of its intention to establish such a facility at a particular site. N.Y. MHL § 41.34(c)(1). The municipality then has forty days after receipt of such notice to either:

> (A) approve the site recommended by the sponsoring agency; (B) suggest one or more suitable sites within in its jurisdiction which could accommodate such a facility; or (C) object to the establishment of a facility of the kind described by the sponsoring agency because [it] would result in such a concentration of community residential facilities for the mentally disabled in the municipality or in the area in proximity to the site selected . . . that the nature and character of the areas within the municipality would be substantially altered.

*Id.*

In the event the municipality objects to the establishment of the facility, the sponsoring agency may "request an immediate hearing before the [OPWDD] [C]ommissioner to resolve the issue." N.Y. MHL § 41.34(c)(5). The OPWDD Commissioner "shall personally or by a hearing officer conduct such a hearing within fifteen days of such a request." *Id.* In reviewing any objections to the establishment of a residential facility, the Commissioner will consider: (1) the need for such facilities in the municipality, and (2) the concentration of such facilities and other similar facilities in the municipality or in the area in proximity to the site selection. "The [C]ommissioner shall sustain the objection if he determines that the nature and character of the area in which the

facility is to be based would be substantially altered as a result of [the] establishment of the facility." *Id.* Any review of the decision rendered by the Commissioner must be conducted via an Article 78 hearing. N.Y. MHL § 41.34(d).

### B. Factual Background

On December 15, 2016, IAHD, a non-profit that operates community residences for people with developmental disabilities, notified the City of White Plains of its intent to establish a group home in the City's Prospect Park neighborhood. (Compl. ¶ 19.) On March 8, 2017, the White Plains Common Council voted to disapprove the establishment of the proposed group home, citing public safety concerns. (*Id.* ¶¶ 22–23.) Namely, certain members of the Common Council expressed their concern for the "walking community" of Prospect Park, which features narrow streets and no sidewalk protection. (*Id.*) The council members feared that the large passenger vans and shuttle busses required by the group home would pose a safety risk to pedestrians and that the narrow street would inhibit fire truck access to the proposed group home. (*Id.*)

On April 19, 2017, OPWDD held a Commissioner's hearing pursuant to MHL § 41.34 to review the municipality's objection to the group home. (*Id.* ¶ 24.) The OPWDD Commissioner issued a decision on June 27, 2017, overruling the White Plains City Council's decision and allowing IAHD to move forward with the Prospect Park group home. (*Id.* ¶ 27.) Shortly thereafter, members of the Prospect Park Association (the "Association") met with the Mayor of White Plains, Thomas Roach, to voice their dissent to OPWDD's decision. (*Id.* ¶ 37.) Mayor Roach informed the Association individuals that he would not pursue an Article 78 hearing for review of OPWDD's decision based on his assessment that the case was "unwinnable." (*Id.*)

3

## C. Procedural Background

The Association filed the present action pursuant to 42 U.S.C. § 1983, alleging violations of its members' Fourteenth Amendment equal protection and due process rights on June 1, 2018. (*See* Compl. ¶¶ 43–66.) Plaintiff subsequently requested a temporary restraining order and preliminary injunction to enjoin Defendants from taking any steps in furtherance of the establishment of a group home in Prospect Park pending the resolution of this litigation. Though Defendants did not directly oppose Plaintiff's request in writing, each Defendant filed a letter motion seeking leave to file a motion to dismiss the entirety of Plaintiff's Complaint. (*See* ECF Nos. 11, 12, & 13.) Additionally, Defendants appeared at a scheduled status conference before this Court on July 20, 2018 and orally opposed Plaintiff's request for a temporary restraining order and preliminary injunction. The Court now considers the parties' arguments in turn.

## LEGAL STANDARDS

The Court applies the same standard to Plaintiff's applications for a preliminary injunction and a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) (the "standards which govern consideration of an application for a temporary restraining order [ ] are the same standards as those which govern a preliminary injunction."); *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002).

Generally, a party seeking a temporary restraining order or a preliminary injunction "must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of

hardships tips decidedly in favor of the moving party." *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir. 2010) (citing *Citigroup Global Mkts.*, *Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34–35 (2d Cir. 2010)). The 'serious question' standard introduces a level of flexibility that "permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fun Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

Where, however, "a party seeks an injunction that will affect governmental action taken in the public interest pursuant to a statutory scheme, the plaintiff must typically show a likelihood of success on the merits—a serious question going to the merits is usually insufficient, even if the balance of hardships tips decidedly in the applicant's favor." *Mullins*, 626 F.3d at 53.

## APPLICATION

As a preliminary matter, the Court notes that because Plaintiff's requested injunction would include enjoining a state agency from carrying out the approval and establishment of a group home—an action that may easily be characterized as "in the public interest" and carried out pursuant to the MHL § 41.34 statutory scheme—the more stringent preliminary injunction standard likely applies to the present action. *See N.A.A.C.P., Inc. v. Town of E. Haven*, 70 F.3d 219, 223 (2d Cir. 1995) (applying the more rigorous standard where Plaintiff attempted to enjoin the hiring of police officers and firefighters). Nevertheless, the Court need not linger on the issue; even assuming the less rigorous standard applies, Plaintiff has failed to demonstrate even a

"sufficiently serious question going to the merits" of the present action. The Court outlines the deficiencies of each of Plaintiff's claim in turn.

### A. Equal Protection

First, Plaintiff has failed to even plausibly allege a Fourteenth Amendment equal protection claim. The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000) (internal quotations marks omitted) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).

"Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [courts] have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Artec Constr. & Dev. Corp. v. City of New York*, No. 15-CV-9494 (KPF), 2017 WL 5891817, at *3 (S.D.N.Y. Nov. 28, 2017) (internal quotation marks omitted); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

"A plaintiff who does not allege any protected class affiliation can [ ] demonstrate an equal protection violation where the plaintiff shows that he or she was treated differently from similarly situated individuals in circumstances where there was no rational basis for the difference in treatment ('class of one'), or where the different treatment was based on a malicious or bad-faith intent to injure ('selective enforcement')." *Artec Constr. & Dev. Corp.*, 2017 WL 5891817, at *4.

In the present action, Plaintiff does not specify under which theory it raises its equal protection claim. Nevertheless, Plaintiff does not allege the existence of any similarly situated comparator. Without such allegations, Plaintiff fails to state either kind of equal protection claim. *See Bradshaw v. City of New York*, No. 17-CV-1199 (AJP), 2017 WL 6060781, at *14 n.15 (S.D.N.Y. Dec. 7, 2017) ("Generally, a plaintiff is required to show similarly situated comparators whether pursuing a selective enforcement or 'class of one' Equal Protection claim."). Accordingly, Plaintiff has failed to show a serious question going to the merits of its equal protection claim.

### B. Due Process

Plaintiff has similarly failed to show a serious question going to the merits of its due process claims.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Due process has both a substantive component and a procedural component." *Nnebe v. Daus*, 184 F. Supp. 3d 54, 61 (S.D.N.Y. 2016). "Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . ." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). Procedural due process, on the other hand, "ensures that, before a person is deprived of life, liberty, or property, he is provided 'constitutionally adequate procedures.'" *Nnebe*, 184 F. Supp. 3d at 61 (quoting *Cleveland Bd. Of Educ. V. Loudermill*, 470 U.S. 532, 541 (1985)).

"To state a substantive due process claim, a plaintiff must allege that (1) it possesses an interest protected by substantive due process (2) that was infringed in an arbitrary and capricious manner." *Stahl York Ave. Co., LLC v. City of New York*, 641 F. App'x 68, 20 (2d Cir.), *cert*

*denied sub nom. Stahl York Ave. Co., LLC v. City of New York, N.Y.*, 137 S. Ct. 372 (2016); *see also Autotech Collision Inc. v. The Inc. Vill. of Rockvill Ctr.*, 673 F. App'x 71, 73 (2d Cir. 2016) (summ. order) ("To pursue a substantive due process claim, plaintiffs must show egregious, outrageous government conduct injurious to an interest implicit in the concept of ordered liberty."). On the other hand, to prevail on a *procedural* due process claim, a plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

Thus, "[i]n order to succeed on a due process claim, whether procedural or substantive, [a] plaintiff must identify a valid liberty or property interest." *Lamont v. Wilson*, No. 14-CV-5052 (NSR), 2015 WL 5003558, at *4 (S.D.N.Y. Aug. 20, 2015) (internal quotation marks omitted); *see also Abraham v. Town of Huntington*, No. 17-CV-03616 (ADS) (SIL), 2018 WL 2304779, at *9 (E.D.N.Y. May 21, 2018) (noting that for both a procedural and substantive due process claim "a plaintiff must demonstrate the existence of a federally protected property right to the relief sought"); *Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 365 (S.D.N.Y. 2014) (recognizing that "the threshold issue" in either a substantive or procedural due process claim is whether Plaintiff possessed a cognizable property or liberty interest).

Here, Plaintiff has failed to identify any property interest at stake in the creation of a group home in the Prospect Park neighborhood. Although Plaintiff maintains that MHL § 41.34 "confers upon [the Association's members] a property right by guaranteeing that their community will not be 'substantially altered,'" (Pl.'s Mem. of Law in Supp. of Order to Show Cause for a TRO and a Preliminary Injunction at 20), courts in this Circuit have rejected that very argument. Indeed, in a case virtually indistinguishable from the matter at hand, the

Honorable Sidney H. Stein aptly noted that MHL § 41.34's purpose "is not to adjudicate property rights but to asses the pros and cons of various locations for group homes. Therefore, it does not purport to have any effect on individual's substantive real property rights." *Ramapo Homeowners' Ass'n v. New York State OMRDD*, 180 F. Supp. 2d 519, 527 (S.D.N.Y. 2002) (internal quotation marks omitted) (quoting *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990)). Judge Stein further noted that "although the members of [a neighborhood] Association may have a property right in the value of their own homes, 'governmental action allegedly causing a decline in property values has never been held to deprive a person of property'" within the meaning of the Fourteenth Amendment. *Id.* (quoting *Fusco v. State of Connecticut*, 815 F.2d 201, 206 (2d Cir. 1987)); *see also Corona Realty Holding, LLC v. Town of N. Hempstead*, No. 08-CV-4997 (JS) (WDW), 2009 WL 2707243, at *5 (E.D.N.Y. Aug. 24, 2009) (noting that "a decline in property values has not been recognized as implicating the [F]ourteenth [A]mendment's due process clause"), *aff'd*, 383 F. App'x 70 (2d Cir. 2010).

Nor do Plaintiff's allegations identify any cognizable liberty interest. As the Second Circuit has noted, the liberty protected by the Fourteenth Amendment "does not include the maintenance of transient levels of the quality of neighborhood life." *See BAM Historic Dist. Ass'n v. Koch*, 723 F.2d 233, 237 (2d Cir. 1983) (holding that neighborhood residents "have no cognizable liberty interest in preventing the location of a shelter for the homeless in their neighborhood").

Because Plaintiff's counsel could not identify a single cognizable property or liberty interest in her pleadings or when questioned by this Court at the July 20, 2018 status conference, Plaintiff has failed to show a serious question as to the merits of both of its due process claims.

### C. Standing

Finally, the Court notes that even if Plaintiff *had* properly alleged an equal protection or due process claim, the Court has serious doubts regarding Plaintiff's standing to assert such claims. "[I]t is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387 (2d Cir. 2015) (internal quotation marks omitted). Thus, insofar as the only injuries alleged by the Prospect Park Association are injuries to its individual members, the Association has no standing to bring a § 1983 suit.

If Plaintiff seeks to sue on its own behalf, it must "*independently* satisfy the requirements of Article III standing." *Id.* (emphasis added). That is, the Association must allege a "perceptible impairment" of its *own* organizational activities to satisfy the "injury in fact" requirement for standing. *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011). Because the Association has failed to provide any allegations of an injury to itself rather than its individual members, the Court cannot find a serious question as to the merits of any of Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, Plaintiff's application for a temporary restraining order and preliminary injunction is DENIED. Plaintiff is granted leave to file an amended complaint consistent with this Court's Opinion on or before August 20, 2018. Each Defendant is granted leave to file a motion to dismiss pursuant to the briefing schedule set by this Court at the July 20, 2018 status conference.

Dated: July 23, 2018
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge